The judgment appealed from is affirmed, at appellant's costs.

(135 So. 243)

**STATE of Louisiana v. Salvadore PARISI.**
No. 31212.

May 25, 1931.

Thomas G. Moran, of New Orleans, for appellant.

Percy Saint, Atty. Gen., and Eugene Stanley, Dist. Atty., and George Gulotta, Asst. Dist. Atty., both of New Orleans, for the State.

OVERTON, J.

This is an appeal from a sentence to the penitentiary for not less than one year nor more than three years for larceny from the person, imposed under Act No. 40 of 1914. The accused represented himself at the trial.

The record presents neither a bill of exceptions nor an assignment of error, nor does

any error appear on the face of the record. The accused has made no appearance in this court, though in the trial court he cross-examined the witnesses against him, and took the stand in his own behalf.

The verdict and the sentence are affirmed.

(135 So. 361)

**STATE v. MARSALISE et al.**
No. 31179.

April 27, 1931.

Rehearing Denied May 25, 1931.

Elmer L. Stewart, of De Ridder, and Hawkins & Pickrel, of Lake Charles, for appellants.

Percy Saint, Atty. Gen. (John J. Robira, Dist. Atty., and S. H. Jones, Asst. Dist. Atty., both of Lake Charles and E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

LAND, J.

The defendants, Charley, Ben, and Tony Marsalise, indicted for receiving stolen goods,

knowing them to have been previously stolen, were tried by jury and convicted and sentenced to the state penitentiary respectively for nine months, not less than sixteen nor more than twenty-four months, and for twelve months.

Defendants have appealed and rely upon twenty-nine bills of exception for reversal of the conviction and sentence.

1. In their brief defendants have expressly waived the following bills of exceptions: Nos. 1, 2, 3, 7, 11, 14, 28, and 29.

■ 2. Bills 15 to 21, inclusive, refer to special charges requested by defendants. As the general charge covers all of the points of law included in the special charges, they were properly refused by the trial judge. State v. Garic, 35 La. Ann. 970; State v. Hamilton, 41 La. Ann. 317, 6 So. 540; State v. Guidor, 113 La. 727, 37 So. 622.

■ 3. Bills 22 and 23 were reserved to the refusal of the trial judge to give to the jury the following special charges:

"No. 9. If you find that the defendants, or any of them, procured, aided, or abetted a thief in the stealing of the goods they are charged with receiving, knowing that they were stolen, they are principals to the larceny of the goods, and not to the crime of knowingly receiving stolen goods, where the evidence merely shows that they *procured* another to steal the goods for their benefit."

"No. 10. Under an indictment for receiving stolen goods, there is no principal in the crime charged except the receiver to the offense; hence, if you find that the defendants procured, aided or abetted the original thief in the stealing of the goods, they would be guilty of larceny but not guilty of receiving stolen goods."

In the per curiams to bills 22 and 23 the trial judge states that: "There was no charge by the state, no claim by the defendants, and no evidence in the record, that defendants, or any of them, participated in the larceny. The special charge requested is evidently based on a statement of the witness Shepard, that Tony Marsalise saw him and Mike Natale leave on the day of the burglary, and asked what time they would be back. It was offered to show, and goes no farther than indicating, that he had some knowledge of the purpose of the trip. The requested charge was therefore irrelevant."

■ When propositions of law, even if correct, have no bearing upon the facts of the case, the trial judge commits no error in refusing to charge them. State v. Guidor, 113 La. 727, 37 So. 622; State v. Jackson, 45 La. Ann. 1031, 13 So. 703; State v. Beck, 41 La. Ann. 584, 6 So. 431.

■ 4. Bills 24, 25, and 26 were reserved to the refusal of the trial judge to give to the jury the following special charges:

"No. 11. If you find from the evidence that the defendants told a thief to go and steal property, bring it to them, and that they would receive it for their use, or with the intention of depriving the owner of same, and, after this, the defendants go about their regular business, and the thief goes some ninety miles away, where he steals property and brings it back in the absence of the defendants, and places it in the store of the defendants, and the defendants have no knowledge that the larceny has actually been committed, or the stolen property placed in their store, and only learn this upon returning to their store, where they find the officers in charge of the stolen goods, they are not guilty of receiving stolen goods."

"No. 12. One not present, aiding and abetting in the commission of a felony, or not near enough to give assistance, if the occasion should arise, but who doth yet procure, coun-

sel or command its commission, is not a principal, but an accessory, but I charge you that this Presence may be constructive, and is considered constructive, if he had done anything to put the design in shape, that without it the crime could not have been committed."

"No. 23. A defendant cannot be convicted as an accessory, if charged as a principal."

In the per curiams to bills 24, 25, and 26, the trial judge states that: "The evidence does not warrant the special charges requested. The question of accessory or principal is not involved. Moreover, it is submitted that the general charge correctly and sufficiently states the law of larceny and of receiving stolen goods."

It is elementary that a trial judge is not required to charge mere abstract propositions of law.

5. Bill 27 was reserved by defendants to the overruling of the motion for new trial, which is based upon the errors assigned in the various bills of exceptions taken by defendants on the trial of the case, upon the insufficiency of the evidence to convict, and upon the specific ground "that the evidence in the case shows that the goods which these defendants have been convicted of receiving were not stolen goods, but were taken with the consent of the owner and by an agent of the owner and sheriff."

This bill presents no questions of law which are not covered by specific bills.

6. Bill 4 repeats the specific ground for new trial, i. e., that the goods consisting of cigarettes and tobacco were not stolen from the store of the Frank Grocery Company of Mansfield, La., but that H. S. Bacon, vice president and general manager of the company, had given his consent that they be taken by an employee of the sheriff's office, who was working in conjunction with the supposed burglar. Under this alleged state of facts, recited by counsel for defendants in this bill, the defense moved to strike the testimony of H. S. Bacon from the record, and requested the court to instruct the jury to disregard the testimony of this witness. The motion and request of the defense were refused by the trial judge for the reason that: "The testimony of the witness Bacon does not show a consent, except that after being informed that a burglary would likely take place, he marked his goods so that they might be traced. It is respectfully urged that the written charge correctly states the law applying to the facts."

The evidence shows that in the afternoon preceding the burglary and larceny, Bacon was notified "that one of three wholesale houses in Mansfield" was slated to be burglarized that night. Bacon proceeded to mark the cartons containing the cigarettes, the probable subject of the proposed larceny, in order to detect the thief, as well as the receiver. After marking the cartons of cigarettes in the store, Bacon locked it securely and left the premises.

The scheme to burglarize the store of the Frank Grocery Company, and to sell the cigarettes to defendants, originated with Joe and Mike Natale, father and son, who are wholesale tobacco and cigarette merchants of De Ridder in the parish of Beauregard. The Natales made a proposition to Dempsey Sheppard, eighteen year old brother of Sam Sheppard of De Ridder, to assist Mike Natale in stealing the cigarettes for sale to C. Marsalise & Company.

Dempsey Sheppard referred the Natales to his brother, Sam Sheppard, who made Sheriff Cain of Beauregard parish acquainted with the design of the Natales, and then accom-

panied Mike Natale on several trips, locating wholesale houses in Orange, Tex., and Vinton, La., for purposes of burglary. Shepard communicated these developments to the sheriff. Finally, Mike Natale suggested "doing a job" at Mansfield, 100 miles from De Ridder, where there were three wholesale houses, including the store of the Frank Grocery Company, of which Bacon is vice president and manager. Sheppard communicated Mike Natale's intention to the sheriff of the parish of Beauregard, who likewise advised Deputy Sheriff Powell of Mansfield, De Soto parish, and arrangements were made with all the three wholesalers there to mark the cartons of the cigarettes for identification, so that they could be identified later, in the event of theft.

The Frank Grocery Company was selected for the burglary. A large quantity of cigarettes and tobacco was taken from the store of this company at 9 o'clock at night by Mike Natale and Sam Sheppard, undercover man for Sheriff Cain of the parish of Beauregard. These goods were taken to De Ridder the following morning before daylight and were unloaded in the home of Joe Natale, father of Mike Natale. Later the cigarettes were moved by the Natales to the Marsalise store, run by the defendants, and were there found by the officers and identified.

Mike Natale confessed his part in the burglary, pleaded guilty, and was sentenced to four years in the state penitentiary by the district court of De Soto parish. Joe Natale was tried first and convicted, and was sentenced to not less than twelve nor more than twenty-four months in the state penitentiary. Defendants were tried later and also convicted.

Sam Sheppard was employed as detective, not by Bacon, general manager of the Frank Grocery Company of Mansfield, but by Sheriff Cain of the parish of Beauregard. Bacon had no communication with either Joe Natale, or Mike Natale, or Sam Sheppard, before the burglary, was committed in Mansfield. He gave no consent to the taking of the goods at the time they were stolen. The original plan was that of the takers, Joe and Mike Natale Sheppard, the agent co-operating with them, was not the agent of Bacon, but of the sheriff, an officer of the law.

In 18 A. L. R. Annotated, page 172, note Larceny, it is said: "It is well established that where the criminal design *originates with the accused*, and the owner does not, in person or by an agent or servant, suggest the design or actively urge the accused on to the commission of the crime, the mere fact that the owner, suspecting that the accused intends to steal his property, in person or through a servant or agent, exposes the property, or neglects to protect it, or furnishes facilities for the execution of the criminal design, under the expectation that the accused will take the property, or avail himself of the facilities furnished, will not amount to a consent in law, even though the agent or servant of the owner, by his instructions, appears to co-operate in the execution of the crime; and the defense of entrapment is inapplicable." See also, to same effect, 36 C. J. par. 96 C, "Cooperation of Agent of Owner," verbo "Larceny."

7. Bills 5, 8, and 9 relate to the same subject-matter, and may be disposed of together.

Dempsey Shepard, a state witness, was asked on direct examination the following question: "Dempsey, did you ever have any dealings with Mike, just prior to the commission of this crime of burglary and receiving stolen goods?"

This question was objected to as immaterial and hearsay, and objection was overruled.

Sam Sheppard, a state witness, was asked on direct examination the following question: "Was the proposition (meaning the proposition the witness had already testified that one Mike Natale had made him to steal cigarettes) of larceny of these cigarettes to sell?"

This question was objected to for the reason that it called for an opinion of the witness and was hearsay.

J. H. Cain, sheriff of Beauregard parish, a state witness, was asked the following question on direct examination: "Who warned you? A. Sam Sheppard came to me some several days before this burglary and told me that Joe Natale had approached his brother about stealing cigarettes, and he came and told me about it and asked me who told about it. I told him if he would get in with them and help me catch them * * *."

This question was objected to as irrelevant and immaterial, and objection overruled.

We find no error in the rulings complained of by defendants. These questions were necessary to enable the state to prove that the criminal design to burglarize the store and steal its contents *originated with the Natales*, and without cooperation of the owner in planning the scheme and that, therefore, the taking of the goods was larceny.

The main defense of the Marsalises was that there was no larceny committed, because the owner of the goods had consented to their taking, by the Natales; hence that the goods were not stolen goods, when received by the Marsalise from the Natales.

S. Dempsey Sheppard, while testifying in chief on behalf of the state, was asked the following question: "Q. Did you have any conversation with Mike, or did you hear Mike talk about this? A. When they first went up to Vinton (meaning Mike Natale and Sam Sheppard) Mike came out to the house and I knew where they were going."

Defendants objected to the testimony concerning any other burglary which might have been committed or attempted in Vinton, for the reason "that it was irrelevant and immaterial and was not concerned with the case on trial in any way."

In the very face of this objection, counsel for defense later placed defendant upon the witness stand and questioned defendant in detail as to the Vinton burglary, as follows:

"Q. Just tell the jury what proposition Sam Sheppard made you? A. You mean that Vinton job? That is the only one besides this Mansfield job.

"Q. *Tell about the Vinton job*. A. He wanted me to help him make money, and I agreed to break in.

"Q. Who broke in? A. We did.

"Q. Who do you mean? A. We both broke in.

"Q. Who took you to Vinton? A. He did.

"Q. What kind of car did you ride in? A. Ford touring car.

"Q. What did he want you to steal at Vinton? (No answer.)

"Q. Was the store broken into? A. Yes.

"Q. Did Sam go with you? A. No Sir, I went in.

"Q. Any cigarettes taken? A. There were some there, but I would not take them. I got the feeling that something was wrong. I got a hunch, and came out.

"Q. Did he help break in the store? A. Yes.

"Q. And refused to go in? A. He didn't go in.

"Q. And that got you suspicious? A. Yes.

"Q. What did not tell him when you came out? A. I told him there was none in there. I didn't want to trust him. Things looked funny." (Tr. pp. 275 and 276.)

[7] In the face of the fact that defendant took the witness stand, and voluntarily, on examination in chief, went into all of the details of the "Vinton job," the the objection urged by defendant to the testimony of Dempsey Shepard as immaterial and irrelevant is frivolous. Besides such testimony, under the circumstances of the case, could not have prejudiced defendant before the jury, even if not admissible.

9. Bill of exception No. 10 was reserved under the following circumstances: Sheriff Cain, while testifying in chief for the state, and after stating that he had searched the defendants' store and found therein the cigarettes and tobacco belonging to the Frank Grocery Company, was asked the following question: "Q. Did you find any other names?" (meaning large cigarette cases bearing the names of other merchants) A. Yes. One from Port Arthur and one from Beaumont."

[8] Defendants objected to this answer of the witness without assigning any ground whatever for the objection. This bill is therefore incomplete, and deserves to be ignored by this court. State v. Green, 36 La. Ann. 185.

[9] The only objection offered by defendants in their brief is that the state was attempting to insinuate that these cases may have contained stolen goods. Defendants state in their brief, page 20, however, that they introduced testimony to "offset these insinuations." The record shows that the defendant Ben Marsalise testified that the case of the Beaumont merchant, Sledger, was a "drop shipment," and that same was used for reshipment, and that the case of the Port Arthur merchant,

Plettman, was an exchange. (Tr. 315, 316.) Manifestly, no harm has been done defendants by the admission of the testimony objected to, since the two cases are shown by defendants not to have been stolen, and the evidence is conclusive that the goods stolen from the Frank Grocery Company of Mansfield were marked cartons of cigarettes, and were found in the store of defendants, and were fully identified. It is expressly provided in article 557 of the Code of Criminal Procedure that: "No judgment shall be set aside, or a new trial granted by any appellate court of this State, in any criminal case, on the grounds of misdirection of the jury *or the improper admission or rejection of evidence*, or as to error of any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of *has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right.*"

It is ordered that the conviction and sentence of each of the defendants, Charley, Ben, and Tony Marsalise, be and are hereby affirmed.

On Application for Rehearing.

PER CURIAM.

[10] One of the grounds upon which a rehearing is asked in this case is that the court failed to pass upon bill of exceptions No. 13. This bill was reserved to a question propounded on cross-examination by the state to the court reporter, a witness for defendant, under the following circumstances:

Joe Natale, defendant in a former trial, has a young son named Tony, who is the

nephew of Tony Marsalise, one of the defendants here.

The court reporter's notes in the Natale case show that the state witness Sam Sheppard testified to the presence of "Tony and Mary Natale and Joe" at the time Sam Shepherd and Mike Natale left De Ridder for the purpose of going to Mansfield, La., to burglarize the store belonging to Frank Grocery Company.

Sam Sheppard, a state witness, testified in the present case that *Tony Marsalise* was present on the occasion above mentioned. It was sought to impeach him on the theory that the Tony referred to in the former case was not Tony Marsalise but Tony Natale. Sheppard insisted that he testified previously that Tony Marsalise was present.

The court reporter was then permitted to testify for defendants, over the objection of the state, as to what Sam Sheppard's testimony was in the Natale case, and stated that the notes of evidence of the Natale trial were correctly transcribed.

Thereupon the state, on cross-examination of the witness, asked the following question: "Is it not a fact that in referring to the defendant, Tony Marsalise, he was always referred to by his first name without the use of his last name?"

This question was objected to by counsel for defense "as assuming a fact not proven, and asking an opinion of the witness, and further, for the reason that the defendant, Tony Marsalise, was not a defendant in that case (Joe Natale case), and for the further reason, that it is not shown that Tony Marsalise was referred to at the time on this point, and the transcribed evidence in the Joe Natale case is the best evidence."

These objections were overruled by the trial judge, and the court reporter, as a witness

for defendants, answered that she did not remember the name, "Tony Marsalise," having been mentioned, but the name of "Tony" was mentioned several times; that Joe Natale was commonly called and referred to by his first name, "Joe," but that she could not say, when the name "Tony" was used, whether it had referred to Tony Natale or to some one else. (Tr. pp. 235, 236.)

Manifestly, the answers of the witness were not prejudicial to defendants.

Bill No. 13 was acted upon in consultation, with the other bills, and was found to be without merit, before the original opinion was written in this case, but was omitted therefrom through inadvertence. As we find no merit in the grounds urged for rehearing, the application of defendants is overruled.