[No. H004151. Sixth Dist. Aug. 30, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO RAYMOND GALAN, Defendant and Appellant.

**COUNSEL**

Dallas Sacher, under appoiintment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye, Matthew P. Boyle and Jeff Bryant, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BRAUER, J.**[*]—A jury convicted defendant Mario Raymond Galan of four counts of attempting to receive stolen property. On appeal he contends that the prosecutor committed misconduct and that his defense counsel acted incompetently. We affirm.[1]

FACTS

Galan's contentions do not require us to set out the facts in detail. In summary Ralph Torres, an undercover police officer, sold Galan jewelry on four occasions. Each time Torres specifically told Galan that the property had been stolen. On the last two occasions Galan gave Torres advice on burglary. Galan told Torres what sort of property to steal, recommended that he try to do three burglaries a night, and suggested a technique for stealing diamonds from jewelry stores.

The People proved their case through the testimony of Officer Torres and through tape recordings of the last two transactions. Galan did not testify on his own behalf. Defense counsel argued that Galan knew Torres was an undercover officer and assumed for that reason that the property had not actually been stolen. To borrow from Galan's brief on appeal, he "sought to convince the jury that he was a law abiding citizen who was merely putting one over on the police by buying goods from them at ridiculously cheap prices."

### A. *Any Prosecutorial Misconduct Was Harmless*

██ Galan contends that the prosecutor committed misconduct by failing to guard adequately against the possibility that a witness would suggest Galan had committed other crimes. Assuming that what happened in this case can properly be called misconduct, the overwhelming strength of the People's case compels the conclusion that the episode had no effect on the verdict.

The alleged misconduct occurred as the prosecutor was examining Officer Johnson about Galan's flight from police. Johnson's testimony, however,

---

[*] Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1] Galan also contends that his conviction of attempting to receive stolen property was improper because the property he purchased from an undercover agent had not actually been stolen. The Supreme Court's decision in *People* v. *Rojas* (1961) 55 Cal.2d 252, 254-258 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252]), however, is to the contrary. Galan acknowledges that we are bound by *Rojas* but invites us to criticize that decision. We decline the invitation.

showed that he had arrived at the scene just after Galan escaped and had not actually witnessed the flight. During this very brief examination the following exchange occurred: "Q [Prosecutor]: Do you know Mario Galan?

"A [Officer Johnson]: Yes, I do.

"Q: From contact concerning the case that is here in court today?

"A: This and prior cases."

As Galan claims, Officer Johnson's reference to "prior cases" probably suggested to the jury that Galan had committed other crimes. Undoubtedly it was for that reason, although the court did not give one, that it struck Officer Johnson's last response. At that time no admonition was requested or given, but the court did later instruct the jurors that they "must not consider for any purpose any offer of evidence that was rejected, or any evidence that was stricken out by the court; such matter is to be treated as though you had never heard of it."

By considering this episode under the heading of "prosecutorial misconduct" we do not mean to fault the prosecutor for a remark that Officer Johnson volunteered. We only apply the misnomer that courts have long used to describe inadmissible evidence that happens to come in while the prosecutor is conducting an examination. Certainly it is true, as the Supreme Court observed in *People* v. *Bolton* (1979) 23 Cal.3d 208, 213-214 [152 Cal.Rptr. 141, 589 P.2d 396], that a defendant can be harmed as seriously by an accident as by intentional misconduct. ■ But as the court also said in *Bolton,* "in the absence of prejudice to the fairness of a trial, prosecutor[ial] misconduct will not trigger reversal." (*Id.* at p. 214.) ■ This standard applies even if, as Galan argues, the prosecutor should have anticipated Officer Johnson's volunteered remark.[2]

The strength of the evidence against Galan makes it abundantly clear that Officer Johnson's remark did not materially affect the verdict. Two audio tapes allowed the jury to listen to transactions in which Galan expressed his belief that he was buying stolen property and gave advice on techniques for future burglaries. Galan did not dispute the tapes' authenticity or present a serious challenge to Officer Torres's testimony. Galan's bizarre defense that he was "putting one over on the police" was undermined by his own statements, on the tapes and to Officer Johnson, which demonstrated a belief that the property had been stolen. With the evidence

---

[2] The reason for the prosecutor's lack of familiarity with Officer Johnson's testimony may be that he received the case only five hours before the trial began.

pointing so unavoidably towards guilt, it is not reasonably probable that a trial without Officer Johnson's remark would have ended in a verdict more favorable to Galan. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

### B. *Counsel Did Not Render Ineffective Assistance*

█ Galan contends that his attorney acted incompetently by calling a witness who gave damaging testimony. The witness in question, Raymond Partida, testified that Galan had unsuccessfully solicited him to give testimony in support of an entrapment defense. We do not, however, consider it incompetence for defense counsel to have called Partida because the record shows that counsel did so at his client's insistence and only after explaining the risks and advising against it.

We know about Galan's disagreement with his defense counsel through the transcript of an in camera hearing, the relevant portion of which follows: "THE COURT: Let the record show these proceedings are being had out of the presence of the prosecutor and out of the presence of everyone else including the jury, except for officers of the court.

"[DEFENSE COUNSEL]: We have had various discussions about calling Mr. Partida . . . . I feel particularly in terms of Mr. Partida there is some risk. There is benefit, as I have explained to Mr. Galan, but there are some—also some risks that will come out during his testimony if he is called on the particular issue we would like him to testify about, in cross-examination. There are other things that could be detrimental to Mr. Galan, and Mr. Galan does want me to have him come in and testify and frankly I have some equivocation about doing that.

"THE COURT: Is this against your advice for tactical reasons?

"[DEFENSE COUNSEL]: At this point I would have to say it is. I could reconsider in the meantime and decide whether or not, but right now I think the potential danger there, it could I think outweigh the benefits that it could bring.

"THE COURT: Mr. Galan, it is your particular wish that Partida testify?

"THE DEFENDANT: Yes, at this time.

"THE COURT: You are doing this against the advice of your counsel at this point?

"THE DEFENDANT: At this point, yes.

"THE COURT: I think the record is protected as far as your conduct as a lawyer is concerned then. All right."

The Supreme Court has said that "when a defendant insists on a course of action despite his counsel's contrary warning and advice, he may not later complain that his counsel provided ineffective assistance by complying with his wishes." (*People* v. *Frierson* (1985) 39 Cal.3d 803, 817 [218 Cal.Rptr. 73, 705 P.2d 396].) This principle will dispose of Galan's contention, but it is first necessary to address his own interpretation of *Frierson*. Galan argues that *Frierson* gives an attorney the exclusive right to determine whether to call a particular witness; since counsel had that right and suspected that Partida would give damaging testimony, counsel had a duty to overrule Galan's decision to call Partida. We find, however, that *Frierson* does not support Galan's argument or even discuss the precise issue he raises.

In *Frierson* the court reversed a judgment of death because of counsel's refusal, against his client's wishes, to present any defense to the special circumstance allegations. The court reversed because "defense counsel and the trial court misjudged the scope of the attorney's authority to override defendant's express wishes on a matter of fundamental importance." (*Id.* at pp. 817-818, fn. omitted.) The court explained that the attorney's obligation, when the client has exercised a personal right, "is simply to provide the best representation that he can *under the circumstances.*" (39 Cal.3d at pp. 816-817, original italics.)

Along the way to this conclusion, the court repeated the Attorney General's argument that the case before the court was "analogous to the many decisions which [had] upheld *an attorney's control over matters of ordinary trial strategy, such as whether a particular witness should be called* (see, e.g., *People* v. *Beagle* (1972) 6 Cal.3d 441, 458 . . .), . . ." (*People* v. *Frierson, supra,* 39 Cal.3d at p. 813, italics added.)

Galan bases his contention on that summary by the Supreme Court of the Attorney General's view. He reads far too much into it. Based solely on *Frierson,* Galan claims that "it has long been the rule that defense counsel has the ultimate authority to determine 'whether a particular witness should be called . . . .'" But *Frierson* did not purport even to address the issue of whether an attorney acts incompetently by acceding to his client's demand that a particular witness be called. Nor was this issue addressed in the only case cited in *Frierson* about calling witnesses. In *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1] the defendant contended

"that trial counsel failed to call certain witnesses, make some unspecified objections to evidence and to ask certain questions on direct and cross-examination." (6 Cal.3d at p. 458.) The court held that "[t]hese are matters of trial tactics as to which we will not ordinarily exercise judicial hindsight." (*Ibid.*) The *Beagle* opinion reflects a disagreement over the scope of an investigation but not over whether to call a particular witness. (*Id.* at p. 459.)

Accordingly, the *Frierson* decision does not support Galan's argument that his attorney had a duty to overrule his decision to call Partida. Because Galan offers no other support for the argument, we reject it.[3] He has not shown that his counsel "failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates." (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

## DISPOSITION

The judgment is affirmed.

Agliano, P. J., and Cottle, J., concurred.

A petition for a rehearing was denied September 21, 1989, and appellant's petition for review by the Supreme Court was denied December 6, 1989.

---

[3] But not just for that reason. To label defense counsel's conduct in this case "incompetent" is to take this abused theory into the stratosphere of legal abstraction: it has never been clearer that the decision under attack was not defense counsel's. The court, defense counsel, and Galan himself took pains to memorialize that fact. And claims such as Galan's place defense counsel between Scylla and Charybdis: if counsel had overruled Galan's decision to call Partida we would certainly be faced with the claim that counsel had deprived his client of an essential defense (see *People* v. *Pope, supra,* 23 Cal.3d at p. 425), since Galan had expected Partida to give favorable testimony on entrapment.