[No. B146790. Second Dist., Div. Five. Feb. 25, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT VARGAS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the heading for part III.A. and parts III.B. and III.C.

## COUNSEL

Allison H. Ting, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, William T. Harter and Juliet H. Swoboda, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## TURNER, P. J.—

### I. INTRODUCTION

Defendant, Robert Vargas, appeals from his convictions for: two counts of carjacking (Pen. Code,[1] § 215, subd. (a)); two counts of second degree robbery (§ 211); and a single count of assault with a deadly weapon. (§ 245, subd. (a)(1).) The jury also found that defendant personally used a deadly and dangerous weapon in the commission of the two carjackings and second degree robberies. (§ 12022, subd. (b)(1).) In the published portion of this opinion, we address the question of whether defendant may be convicted of the completed crime of carjacking when he was unable to make the car move after gaining possession of it. Our resolution of this question depends upon the meaning of the term "felonious taking" in section 215, subdivision (a). We conclude there is no substantial evidence of any asportation or movement of the automobile defendant tried to carjack. We therefore reduce his conviction to that of attempted carjacking.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

## II. Factual Background

We view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560]; *People v. Osband* (1996) 13 Cal.4th 622, 690 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908-909.) On March 1, 2000, defendant pointed a .45-caliber handgun at Gabriel Herrera. His girlfriend, Indira Montiel, accompanied Mr. Herrera. They were accosted as they were getting out of Mr. Herrera's car. Defendant demanded Mr. Herrera's keys and wallet. Defendant got inside the car, manipulated the stick shift, and drove out of the parking structure. Mr. Herrera had approximately $30 to $40 in his wallet. Mr. Herrera also had approximately $200 in the ashtray of his car, which his mother had given him to buy a new tire. In addition, Mr. Herrera had a baby gift, which Ms. Montiel had purchased for his nephew. Mr. Herrera had just purchased a $1,500 stereo system for the car. When the car was returned to Mr. Herrera, none of those items was inside.

On March 4, 2000, Roberto Velasquez, Martina Saavedra, and Yolanda Ramirez were sitting in a parked rental car. Mr. Velasquez was in the driver's seat of the rented automobile. Defendant walked past the car. Defendant then ran back and pointed a gun at Mr. Velasquez. Mr. Velasquez testified, "[H]e pointed a gun [at] me and he told me, 'Get out of the car.' " Defendant then said, "Give me your money, your wallet." The keys were in the ignition of the car. At trial, Ms. Saavedra testified she believed the engine was still running. Mr. Velasquez testified the engine was not running when he got out of the car. Ms. Saavedra left her wallet in the car. Ms. Saavedra, Ms. Ramirez, and Mr. Velasquez got out of the car and walked away to call the police. When defendant got into the rented car, the engine was no longer running. Defendant attempted to start the car. Defendant moved the key around in the ignition causing a "grinding" noise and manipulated the stick shift back and forth. The rented car did not move. Defendant then got out of the car and quickly walked away.

Los Angeles County Sheriff's Department Detective Todd Anderson served a search warrant for defendant's residence on March 7, 2000. Detective Anderson recovered a pellet gun which resembled a .45-caliber automatic handgun. He also recovered a black knit beanie, which resembled the one worn by the person who took the cars on both March 1 and 3, 2000, as described by the victims. Following his arrest and waiver of his constitutional rights, defendant admitted the beanie belonged to him. However, defendant said the pellet gun found in his home did not belong to him. Defendant's residence was within one block of where each of the carjackings

occurred. Both defendant and his girlfriend, Charleen Regalado, told Detective Anderson that he was either at work or home on March 1, 2000. Defendant's workday ended at 6:00 p.m. Ms. Regalado did not know where he was after work on March 1, 2000.

### III. DISCUSSION

. . . . . . . . . . . . . . . . . . . . . . . . . . . .*

■  Defendant argues there was insufficient evidence to support his conviction for the completed offense of carjacking of Mr. Velasquez's rented automobile as charged in count 4. As noted previously, we view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia, supra,* 443 U.S. at p. 319 [99 S.Ct. at p. 2789]; *People v. Osband, supra,* 13 Cal.4th at p. 690; *Taylor v. Stainer, supra,* 31 F.3d at pp. 908-909.) The standard of review is the same in cases where the prosecution relies primarily on circumstantial evidence. (*People v. Stanley* (1995) 10 Cal.4th 764, 792-793 [42 Cal.Rptr.2d 543, 897 P.2d 481]; *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698]; *People v. Bean* (1988) 46 Cal.3d 919, 932-933 [251 Cal.Rptr. 467, 760 P.2d 996].) Our sole function is to determine if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia, supra,* 443 U.S. at p. 319 [99 S.Ct. at p. 2789]; *People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374]; *People v. Marshall* (1997) 15 Cal.4th 1, 33-34 [61 Cal.Rptr.2d 84, 931 P.2d 262]; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) The Supreme Court has held, "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin, supra,* 18 Cal.4th at p. 331, quoting *People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

Section 215 provides: "(a) 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." Defendant argues since there was no "felonious taking" or slight movement of the car driven by Mr. Velasquez, there was no completed carjacking. Defendant therefore argues his conviction as to count 4 should be reduced to attempted carjacking. For the following reasons, we agree.

---

*See footnote, *ante,* page 456.

This is an issue of statutory interpretation. ■ We apply the following standard of statutory review described by the California Supreme Court: "When interpreting a statute our primary task is to determine the Legislature's intent. [Citation.] In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; *People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) The Supreme Court has emphasized that the words in a statute selected by the Legislature must be given a "commonsense" meaning when it noted: " 'Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. (*Mercer v. Department of Motor Vehicles* (1991) 53 Cal.3d 753, 763 [280 Cal.Rptr. 745, 809 P.2d 404]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)' (*People v. Valladoli* (1996) 13 Cal.4th 590, 597 [54 Cal.Rptr.2d 695, 918 P.2d 999].)" (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) Further, our Supreme Court has noted: " 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) . . . .' [Citation.]" (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) ■ However, the literal meaning of a statute must be in accord with its purpose as the Supreme Court noted in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179] as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute]. . . .' " In *Lungren v. Deukmejian, supra,* 45 Cal.3d at page 735, our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation] . . . ." ■ The Supreme Court has held: " 'The courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers.' (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813 [114 Cal.Rptr. 577, 523 P.2d 617].)" (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596].) Further, the Supreme

Court has held: "We have recognized that a wide variety of factors may illuminate the legislative design, ' "such as context, the object in view, the evils to be remedied, the history of the time and of legislation upon the same subject, public policy and contemporaneous construction." ' (*In re Marriage of Bouquet* [(1976)] 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371] quoting *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].)" (*Walters v. Weed* (1988) 45 Cal.3d 1, 10 [246 Cal.Rptr. 5, 752 P.2d 443].)

■ As can be noted, the express language in section 215, subdivision (a), requires that a "felonious taking" occur. The term "felonious taking" appears in section 211, which defines the crime of robbery. In *People v. Alvarado* (1999) 76 Cal.App.4th 156, 160 [90 Cal.Rptr.2d 129], the Court of Appeal for the Fifth Appellate District analyzed the "felonious taking" requirement in section 215, subdivision (a) and its relation to the same language in section 211 as follows, and we quote the analysis at length: "In *People v. Medina* (1995) 39 Cal.App.4th 643 [46 Cal.Rptr.2d 112], we examined the legislative history of Penal Code section 215 and took note of the following: ' "According to the author [of the legislative bill], there has been considerable increase in the number of persons who have been abducted, many have been subjected to the violent taking of their automobile and some have had a gun used in the taking of the car. [¶] This relatively 'new' crime appears to be as much thrill-seeking as theft of a car. If all the thief wanted was the car, it would be simpler to hot-wire the automobile without running the risk of confronting the driver. People have been killed, seriously injured, and placed in great fear, and this calls for a strong message to discourage these crimes. Additionally, law enforcement is reporting this new crime is becoming the initiating rite for aspiring gang members and the incidents are drastically increasing. [¶] *Under current law there is no carjacking crime per se and many carjackings cannot be charged as robbery because it is difficult to prove the intent required of a robbery offense (to permanently deprive one of the car)* since [many] of these gang carjackings are thrill seeking thefts. There is a need to prosecute this crime." (Assem. Com. on Pub. Safety[,] analysis of Sen. Bill No. 60 (1993-1994 Reg. Sess.) July 13, 1993, p. 1.)' (*People* v. *Medina, supra,* 39 Cal.App.4th at pp. 647-648, italics added.) [¶] Based on the foregoing legislative history, it appears the Legislature intended to treat carjackings just like robbery with two exceptions: (1) carjackings require an intent to either temporarily or permanently deprive the owner of the property whereas robbery always requires an intent to permanently deprive, and (2) carjackings only involve vehicles whereas robbery may involve any type of property. There is no indication that the Legislature intended to alter the meaning of a felonious taking." In *People v. Duran* (2001) 88 Cal.App.4th 1371, 1377 [106

Cal.Rptr.2d 812], the Court of Appeal for Division Three of the Fourth Appellate District adopted the foregoing analysis concerning the felonious taking requirement.

Further, we agree with the following analysis of Retired Presiding Justice Christopher Cottle in *People v. O'Neil* (1997) 56 Cal.App.4th 1126, 1131 [66 Cal.Rptr.2d 72] where he noted: "Robbery is defined as 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' (§ 211.) While a distinct crime from robbery, the elements and statutory language of carjacking are analogous to those of robbery, and the 'taking' language of the carjacking statute is framed in identical language to the robbery statute. We therefore presume the Legislature intended the carjacking statute to ' " 'be given a like interpretation.' " ' (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 598 [183 Cal.Rptr. 360, 645 P.2d 1192]; see also *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 318 [250 Cal.Rptr. 116, 758 P.2d 58].)" We have carefully reviewed the committee reports prepared in connection with the adoption of section 215, subdivision (a) in 1993. There is no evidence the Legislature intended to adopt a "felonious taking" requirement different from that for robbery. Hence, in order for the completed offense of carjacking to occur, there must be a felonious taking of the motor vehicle.

For a "felonious taking" to occur in a robbery, there must be a carrying away or asportation of the stolen property. (*People v. Cooper* (1991) 53 Cal.3d 1158, 1165 [282 Cal.Rptr. 450, 811 P.2d 742] ["The taking element of robbery itself has two necessary elements, gaining possession of the victim's property and asporting or carrying away the loot."]; 2 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Crimes Against Property, § 93, pp. 123-124.) The movement or asportation need only be very slight. (*People v. Cooper, supra*, 53 Cal.3d at p. 1165; *People v. Pham* (1993) 15 Cal.App.4th 61, 65 [18 Cal.Rptr.2d 636].) In the present case, defendant was unable to move the rented automobile. No doubt, defendant gained possession of the rented automobile; but there is no substantial evidence he ever moved it, not in the slightest. Because there was no substantial evidence that defendant was able to move the rented car even very slightly, the greatest offense of which he can be convicted is attempted carjacking. We therefore reduce his conviction under count 4 to attempted carjacking. (§ 1260; *People v. Rojas* (1961) 55 Cal.2d 252, 260-261 [10 Cal.Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252] [receiving stolen property conviction reduced to lesser-included offense of attempted receiving stolen property]; *People v. Jones* (1999) 75 Cal.App.4th 616, 626-628 [89 Cal.Rptr.2d 485] [carjacking conviction reduced to lesser-included offense of attempted carjacking].) Further, we agree that he is entitled to resentencing on count 4.

B., C.*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## IV.   Disposition

The conviction under count 4 is reduced to the crime of attempted carjacking. Defendant is to be resentenced only as to count 4. Upon the completion of resentencing, the superior court clerk is directed to issue an amended abstract of judgment which correctly reflects the sentence imposed as well as presentence credits as set forth in this opinion and forward it to the Department of Corrections. The judgment is affirmed in all other respects.

Armstrong, J., and Mosk, J., concurred.

---

*See footnote, *ante*, page 456.