[No. D050536. Fourth Dist., Div. One. Aug. 8, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN RENTERIA, Defendant and Appellant.

**COUNSEL**

Steven J. Carroll, Public Defender, Matthew Braner and Zaki Zehawi, Deputy Public Defenders, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting and Robin Derman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BENKE, Acting P. J.**—Brian Renteria pled guilty to one count of auto taking and one count of attempting to evade a peace officer. Renteria was granted probation. He appeals, arguing California lacked territorial jurisdiction to convict him of attempting to evade an officer.[1]

FACTS

Around midday on February 22, 2006, uniformed California Highway Patrol Officer Tony Camilleri was driving his marked patrol car southbound on Interstate 5 in the area of the United States Marine Corps Base at Camp Pendleton. Near the Las Pulgas exit, the officer received a report concerning a stolen van. Not long after getting the report, he saw the van driving in front of him. The driver was later identified as appellant. The officer pulled behind the van and maintained a distance of about 20 feet between him and the stolen vehicle. The van drove at speeds of 60 to 65 miles an hour, but sometimes slower. Waiting for a backup unit, Camilleri took no action to stop the vehicle.

The officer followed the stolen van for some distance. Eventually, the van turned off the freeway at an exit in Oceanside. Camilleri, still immediately behind the van, followed. At the end of the off-ramp, the van turned east on a road leading to the main gate at Camp Pendleton.

When the van stopped at the gate, which is on the base, it was approached by two military policemen. Camilleri, still immediately behind the vehicle, called on his loudspeaker for the officers to stop the van. When he did so, the van sped quickly away into the base. Camilleri turned on his lights and siren

---

[1] The issue is raised pursuant to a certificate of probable cause. (Pen. Code, § 1237.5.)

and pursued for about two-tenths of a mile. Because he was unfamiliar with the area, he pulled over and allowed the military police to conduct the pursuit.

Military Police Officer Christopher Hendrix, driving a marked military police car, saw the van, activated his lights and siren and took up the pursuit. Hendrix followed the van at a high rate of speed. The van attempted to evade the officer by driving in an erratic manner, also at a high rate of speed. At times the van drove on the wrong side of the street. It went through two red lights and drove down a sidewalk. At one point, Hendrix got close enough to see that appellant was talking on a cell phone. Eventually the van was stopped and appellant was placed under arrest.

After his arrest, appellant told an officer that he was driving southbound on Interstate 5 on his way to Vista. He denied knowing the van was stolen and stated he did not want to stop because he wanted to call his mother first.

## DISCUSSION

Appellant argues the conduct that served as the basis for his conviction of felonious evasion of a peace officer occurred on a federal enclave and thus the State of California had no jurisdiction to convict him of that offense.

### 1. *Background*

#### a. *Charges*

Appellant was charged with the crimes of auto taking and felony evasion of a peace officer. He demurred to that part of the complaint charging felony evasion, arguing the crime occurred in a place under the exclusive criminal jurisdiction of the federal government and the State of California had no jurisdiction to charge him with the offense. The demurrer was overruled at the preliminary hearing and appellant was bound over for trial on both charges.

#### b. *Appellant's Section 995 Motion*

Appellant moved under Penal Code[2] section 995 for dismissal of the information with regard to the felony evasion charge because the evidence offered at the preliminary hearing was insufficient to prove (1) that the offense occurred within the territorial jurisdiction of the State of California and (2) the officers that appellant attempted to evade were California peace officers.

---

[2] All further statutory references are to the Penal Code unless otherwise specified.

As to the jurisdictional claim, appellant argued jurisdiction could only be based on section 778a, which requires that when a person intending to commit a crime does any non de minimis act in California to execute that intent and a crime results either in or out of this state, the person is punishable under the laws of California. Appellant argued there was no evidence that he formed an intent in this state to commit a *felony* evasion and no evidence he committed any non de minimis act in California in execution of that intent.

As to the argument the evidence was insufficient to prove the element that he evaded a peace officer, appellant noted that military police officers are not peace officers under section 830 et seq. and that he did nothing to evade the California Highway Patrol officer.

### c. *Prosecution Opposition*

The prosecution replied that the evidence at the preliminary hearing was sufficient to satisfy the jurisdictional requirements of section 778a and that appellant attempted to evade a California peace officer. As to the jurisdictional claim, the prosecution argued that viewed in its totality the evidence was sufficient to show appellant formed an intent in California to evade a peace officer and committed acts in California to that end.

The prosecution noted that when Officer Camilleri pulled behind the stolen vehicle, appellant exited the freeway. Appellant later told officers he was driving south on Interstate 5 on his way to Vista. The prosecution noted the exit appellant took was not the one for Vista. It argued appellant had no legitimate reasons for entering Camp Pendleton. The prosecution noted that after stopping, appellant ran the gate at Camp Pendleton, failed to stop when Officer Camilleri followed him for a short distance with lights and siren and then refused to stop when pursued by military police officers. The prosecution argued the evidence was sufficient to prove appellant knew he was driving a stolen vehicle and intended to evade officers.

The prosecutor argued, contrary to appellant's position, that it was unnecessary appellant form the intent in California to *feloniously* evade a peace officer within the meaning of Vehicle Code section 2800.2, subdivision (a), i.e., attempting to evade an officer by driving with a willful and wanton disregard for the safety of persons or property. It was sufficient that appellant

merely form the intent in California to evade a peace officer within the meaning of Vehicle Code section 2800.1, subdivision (a), i.e., willfully fleeing or attempting to elude a pursuing officer. The prosecutor argued the former is merely an aggravated form of the latter.

The prosecution argued appellant's non de minimis act in execution of his intent to evade an officer was his act of exiting the freeway and driving onto Camp Pendleton.

The prosecution conceded that the military officers who pursued appellant on Camp Pendleton were not California peace officers. It argued, however, appellant's crime was a continuing one that started in California and was related to the actions of a California peace officer.

### d. *Ruling*

The trial court concluded the evidence presented at the preliminary hearing was sufficient to support a finding appellant formed an intent in California to feloniously evade a peace officer within the meaning of Vehicle Code section 2800.2, subdivision (a). The court noted when the highway patrol officer told the military police at the gate to stop the van, appellant drove away in a reckless manner. The court concluded appellant had undoubtedly earlier, while in California, formed the intent that if the officer attempted to stop him, he would flee. As to the non de minimis acts committed in California, the court cited appellant's leaving the freeway.

As to the issue that the evidence was insufficient to support the finding appellant attempted to evade a California police officer, the court found the attempted evasion began when Officer Camilleri told the military police at the gate to stop the van. When appellant sped off, Camilleri began the pursuit but quickly turned it over to the military police. The crime of evasion is a continuing one and the fact most of the pursuit was conducted by non-California peace officers was irrelevant.

### 2. *Law*

### a. *Evading a Peace Officer*

Vehicle Code section 2800.1, subdivision (a), makes it a misdemeanor to operate a motor vehicle with "the intent to evade, willfully flee[] or otherwise attempt[] to elude a pursuing peace officer's motor vehicle" when the peace officer's vehicle is exhibiting at least one red lamp visible to the front, is sounding a siren as may be reasonably necessary, the peace officer's

vehicle is distinctively marked, the operator of the police vehicle is a peace officer as defined in section 830 et seq. and the officer is wearing a distinctive uniform.

Vehicle Code section 2800.2, subdivision (a), makes it a felony if in violation of Vehicle Code section 2800.1, subdivision (a), the person attempting to elude the pursuing peace officer drives with "a willful or wanton disregard for the safety of persons or property."

For the purposes of Vehicle Code section 2800.2, subdivision (a), willful or wanton disregard for the safety of persons or property "includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs." (Veh. Code, § 2800.2, subd. (b).)

A member of the California Highway Patrol is a peace officer within the meaning of Vehicle Code sections 2800.1 and 2800.2. (Pen. Code, § 830.2, subd. (a).) Federal law enforcement officers are not peace officers within the meaning of the sections. (§ 830.8, subd. (a).)

b. *Territorial Jurisdiction*

Camp Pendleton is a federal enclave and the federal government exercises exclusive criminal jurisdiction over it. (*United States v. Jenkins* (9th Cir. 1983) 734 F.2d 1322, 1325.)

California conducts criminal proceedings to enforce its own law and not to enforce the criminal law of other states or the federal government. At common law, criminal territorial jurisdiction was narrow and crimes were viewed as occurring in only one location. That view, however, has given way to a broader, more pragmatic concept of territorial jurisdiction. The federal constitutional limitation on the states' extraterritorial criminal jurisdiction has not been delineated, but it is clear such extraterritorial jurisdiction is appropriate when the state has some legitimate interest in the criminal conduct involved. Statutes that extend a state's criminal jurisdiction to crimes that culminate beyond its borders " 'are premised on the belief that a state should have jurisdiction over those whose conduct affects persons in the state or an interest of the state, provided that it is not unjust under the circumstances to subject the defendant to the laws of the state.' (Model Pen. Code & Commentaries, com. 1 to § 1.03, p. 35.)" (*People v. Betts* (2005) 34 Cal.4th 1039, 1047 [23 Cal.Rptr.3d 138, 103 P.3d 883]; see also 4 LaFave et al., Criminal Procedure (3d ed. 2007) § 16.4(c).)

Statutorily, California's criminal jurisdiction extends to crimes committed "in whole or in part" in the state. (§ 27, subd. (a)(1).) Section 778a, subdivision (a) states: "Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of that intent, which culminates in the commission of a crime, either within or without this state, the person is punishable for that crime in this state in the same manner as if the crime had been committed entirely within this state."

■ In *People v. Betts, supra,* 34 Cal.4th at page 1047, our Supreme Court, relying on *People v. Morante* (1999) 20 Cal.4th 403, 436 [84 Cal.Rptr.2d 665, 975 P.2d 1071], interpreted section 778a to mean that "California has territorial jurisdiction over an offense if the defendant, with the requisite intent, does a preparatory act in California that is more than a de minimis act toward the eventual completion of the offense."

■ The issue of whether territorial jurisdiction exists is decided by the trial court, not by a jury. The prosecution must prove the facts necessary to a finding of territorial jurisdiction by a preponderance of the evidence. (*People v. Betts, supra,* 34 Cal.4th at p. 1054.)

We apply the trial court's determination of factual issues if supported by substantial evidence but independently review its legal determinations. Cases, however, have not made clear whether the trial court's application of the law to the facts should be reviewed independently or deferentially. (*People v. Betts, supra,* 34 Cal.4th at p. 1055.)

### 3. *Discussion*

We conclude the trial court properly found that based on the circumstances of this case, California had territorial jurisdiction such that appellant could properly be charged with and convicted of felonious evasion of a peace officer under Vehicle Code section 2800.2, subdivision (a).

As noted, pursuant to section 778a, California has territorial jurisdiction when "with intent to commit a crime" a person "does any act within this state in execution or part execution of that intent, which culminates in the commission of a crime, either within or without this state."

In this case the acts of evasion as defined in Vehicle Code sections 2800.1, subdivision (a), and 2800.2, subdivision (a), i.e., flight from a peace officer with wanton disregard for the safety of persons and property when pursued by a marked police vehicle, driven by a uniformed officer, displaying a forward facing red light, all occurred on Camp Pendleton.

The jurisdictional question then is whether there was sufficient evidence that appellant, while still in California, formed the intent to evade, willfully flee or otherwise attempt to elude a pursuing officer and did acts in execution or partial execution of such intent within this state.

There is certainly evidence to support the conclusion that while appellant drove on Interstate 5 and the streets of Oceanside in a stolen van with a highway patrol car only feet behind him, he formulated the intent that if the officer attempted to stop him he would flee with a wanton disregard for persons and property. The best evidence of this is that it is precisely what he did.

The more difficult issue is whether appellant did, within the meaning of section 778a, "any act" within this state in execution or part execution of that intent. Our Supreme Court has described a sufficient act as "a preparatory act in California that is more than a de minimis act toward the eventual completion of the offense." (*People v. Betts, supra,* 34 Cal.4th at p. 1047; see *People v. Morante, supra,* 20 Cal.4th at p. 436.)

While the phrase "a preparatory act in California that is more than a de minimis act" is useful, we conclude that its formulation was driven by the circumstances of the case in which it was coined, *People v. Morante,* and it is not the full expression of the acts sufficient for a finding of territorial jurisdiction.

Before *Morante,* and based on our Supreme Court's earlier opinion in *People v. Buffum* (1953) 40 Cal.2d 709 [256 P.2d 317], it was generally concluded that California lacked jurisdiction over a criminal act that culminated out of state unless the actions of the defendant in this state amounted to an attempt to commit the crime. (*People v. Morante, supra,* 20 Cal.4th at pp. 419–422.)

The court in *Morante* noted that one theoretical concern leading to that conclusion in *Buffum* was that if an in-state attempt was not a requirement for jurisdiction over a crime culminating out of state, there would be "no valid basis to distinguish a case in which a defendant's in-state conduct renders our jurisdiction appropriate from one in which a defendant's conduct in state, even if intended to achieve a criminal goal elsewhere, is so de minimis that our state nonetheless may not assert its jurisdiction over the committed offense." (*People v. Morante, supra,* 20 Cal.4th at p. 436.)

In rejecting the requirement for an attempt as a basis for jurisdiction, the court in *Morante,* understandably, used the term "preparatory act" because of that term's common use in the context of the concept of attempt, i.e., an

attempt requires an act of more than mere preparation. (See generally *People v. Kipp* (1998) 18 Cal.4th 349, 376 [75 Cal.Rptr.2d 716, 956 P.2d 1169].) Thus, given the issues faced by the court in *Morante*, it was useful to describe the act requirement of section 778a as less than an attempt, i.e., a meaningful act of preparation.

Territorial jurisdiction as discussed in *Betts* and *Morante*, is, however, ultimately a question of whether a state has a legitimate interest in a criminal act such that it is reasonable to convict a defendant of its commission in this state. This question necessarily can only be answered by a review of all the particular facts and circumstances of a case and is not solely dependent on concepts like attempt or preparation, concepts that may in some circumstances do more to cloud rather than illuminate the relevant-interest analysis. The ultimate question is whether given the crime charged there is a sufficient connection between that crime and the interests of the State of California such that it is reasonable and appropriate for California to prosecute the offense.

In this case we answer the question in the affirmative.

Appellant was driving a stolen car on a freeway in California. As we have noted, when approached by a California Highway Patrol car, appellant clearly formulated the intent that when necessary he would flee from the officer. It is reasonable to conclude that as a preparatory act appellant, who was driving a stolen vehicle, exited the freeway to avoid the highway patrol officer. It is reasonable to conclude that appellant's arrival at the main gate to Camp Pendleton was a fortuity. It is difficult to believe appellant, in a stolen car, followed by a highway patrolman would choose to stop at a gate guarded by armed Marines. When appellant stopped only feet onto the base, the highway patrol officer was still immediately behind appellant and was still intent on arresting him. When the officer sought the assistance of the Marine guards, appellant fled. The highway patrol car, lights and siren activated, pursued appellant for a short distance before yielding the pursuit to the military police. Appellant's felonious evasion occurred on a military installation that, while relatively large, is surrounded by the State of California. The installation's roads disgorge onto California roadways.

While the felonious evasion aspects of appellant's flight came when he was pursued by military police officers, appellant's initial evasion on the federal enclave was from a California peace officer who had followed him onto the base. The military officers merely continued that pursuit.

■ Under the circumstances of this case, the trial court properly found that there is a sufficient connection between appellant, his crime and the circumstances of his crime such that the State of California has a legitimate interest in charging him for his felony evasion of an officer even though the crime culminated on a federal enclave.

The judgment is affirmed.

McDonald, J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 2008, S166839.