**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

CARMEL A. TELLO,
            *Defendant-Appellant.*

No. 08-50579

D.C. No.
2:07-cr-01222-
SVW-1

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Submitted March 1, 2010*
Pasadena, California

Filed April 7, 2010

Before: Ronald M. Gould and Sandra S. Ikuta,
Circuit Judges, and Lloyd D. George,**
Senior District Judge.

Opinion by Judge Gould

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Lloyd D. George, Senior United States District Judge for the District of Nevada, sitting by designation.

**COUNSEL**

Mark Yanis, Huntington Beach, California, for the defendant-appellant.

George S. Cardona, Acting United States Attorney; Christine C. Ewell, Assistant United States Attorney; and Mark A. Williams, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

**OPINION**

GOULD, Circuit Judge:

Defendant-Appellant Carmel A. Tello appeals his conviction under 18 U.S.C. § 2422(b) of using a means of interstate

commerce to knowingly persuade, induce, entice, or coerce a minor to engage in a sexual activity for which he can be charged with a criminal offense. The government alleged in the criminal indictment that Tello used the Internet and telephone to knowingly persuade, induce, and entice a minor to engage in sexual activity for which Tello could be charged with a criminal offense under California law. Tello argues on appeal that the evidence at trial showed only that he intended to engage in sexual activity with the minor in Arizona, not California. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because Tello could have been convicted of a criminal offense under California law, even if he intended to engage in sexual activity with the minor only after returning to Arizona, we affirm his conviction.

## I

Carmel A. Tello, who lived in Arizona, initiated an Internet chat conversation with a computer user known as "Cutelagrl93." Unbeknownst to Tello, the actual user of the Cutelagrl93 screen name[1] was an undercover agent with the Federal Bureau of Investigation ("FBI") who was posing online as a thirteen-year-old girl living in Southern California. Thus identified, Tello elaborated his illicit criminal plans to his detriment: During the ensuing chat sessions, Tello proposed that he and Cutelagrl93 engage in sexual activities, including intercourse, oral sex, and other sex acts. Tello said he would drive to California to meet Cutelagrl93 and return with her to Arizona where she could live with him and have sex. The defendant drove to California to meet Cutelagrl93. He was arrested by the FBI when he arrived at the prearranged time and place in West Los Angeles. The government charged

---

[1]"A screen name is an appellation used to identify oneself in a chat room or when sending instant messages to another computer user. Although it can be the user's real name, it is more often a pseudonym." *United States v. Meek*, 366 F.3d 705, 710 n.3 (9th Cir. 2004) (quotation marks omitted).

Tello with violating 18 U.S.C. § 2422(b), using a means of interstate commerce to knowingly persuade, induce, entice, or coerce a minor to engage in a sexual activity for which he can be charged with a criminal offense.

During Tello's bench trial, the government called six witnesses, including the undercover FBI agent and Tello's son. The FBI agent testified that he created the Cutelagrl93 screen name with an online profile of a thirteen-year-old girl and entered a chat room called "Taken [read: Take In] Unwanted YF" (presumably "YF" meaning "young females"). Tello, using the screen name "CrmTel1," initiated a conversation with Cutelagrl93.

During the Internet conversation,[2] Cutelagrl93 explicitly stated that she was a thirteen-year-old girl living in Southern California. Tello asked Cutelagrl93 if she had considered running away and if so whether she wanted to live with him. Tello brought up sexual topics and discussed various sexual activity that he wanted to engage in with Cutelagrl93, including oral sex, sexual intercourse, and masturbation. Tello also started a live webcam session showing Cutelagrl93 his nude body. In addition to discussing the various sex acts that he wanted to perform on or with Cutelagrl93, Tello stated that he thought about sex all the time and that he specifically wanted to have sex with Cutelagrl93 all the time. Tello explained that he wanted to travel from Arizona to meet Cutelagrl93 in California and that he and Cutelagrl93 would have sex in his home in Arizona:

> **Cutelagrl93 [05:13 PM]:** where wud we have sex??????????

---

[2]Because Internet communication is often informal, involving typographical errors, symbols, shorthand, and abbreviations, we do not use "[sic]" to indicate every grammatical or spelling error or mistake in the chat room text.

**[Tello] [05:13 PM]:** yes in my house

**[Tello] [05:13 PM]:** I live in a traler home

**Cutelagrl93 [05:14 PM]:** so do u drive ur traler to LA?

**[Tello] [05:14 PM]:** no

**[Tello] [05:14 PM]:** when I go there it will be in my truck

**Cutelagrl93 [05:14 PM]:** so u wud pick me up then take me to ur house then we wud have sex?

**[Tello] [05:14 PM]:** an if we have sex it will be here

**Cutelagrl93 [05:15 PM]:** where wud that be?

**[Tello] [05:15 PM]:** here in az

Tello said he would leave Arizona and be in California to meet Cutelagrl93 in ten hours. Cutelagrl93 asked Tello when he would go back to Arizona, and Tello said he did not know. Tello arranged to meet Cutelagrl93 the next day at a bookstore in Los Angeles at 8:00 p.m. Tello drove from his home in Arizona straight through for approximately ten hours until he reached Los Angeles, stopping only for gas and food. When Tello arrived at the bookstore, the FBI arrested him.

The government admitted into evidence the transcripts of the Internet chat conversations as well as excerpts of Tello's videotaped interrogation. Tello waived his *Miranda* rights and agreed to answer the FBI's questions. Tello said that he planned to spend the night in California with his son and would return home the next morning. But Tello did not bring with him any medication, any luggage, or any change of clothing. Tello admitted to creating the "young female" chat

room and talking to Cutelagrl93 about sexual activity that he sought with her. After the close of the government's case, Tello moved for judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing about the weight of the evidence, and, at Tello's request, the district court deferred ruling on the motion until after the defense's case.

Tello admitted in his testimony that he communicated with Cutelagrl93 and made sexual statements. But Tello testified that he thought he was talking to an older woman who was role playing as a young girl. Tello also testified that he did not intend to go home after he picked up Cutelagrl93 at the bookstore. He explained that, while he did not bring any medication with him, he did not have to take his medication every day. He also testified that he was going to his son's house. Tello's son testified that Tello said he would be visiting the son but later cancelled because Tello said he was going to meet a girl instead.

During closing arguments, Tello's counsel argued that Tello did not know that Cutelagrl93 was a minor, that Tello was only role playing, and that there was no evidence that Tello's visit to California was for the purpose of engaging in sexual conduct. The government argued that the Internet chat sessions showed that Tello specifically intended to engage in sexual activity with Cutelagrl93; that the role-playing defense came up only at trial, not during Tello's interrogation; that Tello "had every intention to pick the girl up, turn right around and return to Arizona and have sex with her in his trailer"; and that Tello's conduct would have violated California law. The trial judge rejected Tello's defensive theories and found Tello guilty, and then sentenced him to ten years' imprisonment. Tello timely appealed his conviction.

## II

We review de novo the sufficiency of the evidence to support a conviction. *United States v. Salman*, 531 F.3d 1007,

1010 (9th Cir. 2008). We view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* The same standard applies to bench trials. *United States v. Overton*, 573 F.3d 679, 685 (9th Cir. 2009).

## III

Tello was convicted of violating 18 U.S.C. § 2422(b),[3] which states the following:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

To convict Tello under this statute, the government had to prove that Tello, using a means of interstate commerce, "knowingly (1) attempted to (2) persuade, induce, entice, or coerce (3) a person under 18 years of age (4) to engage in sexual activity that would constitute a criminal offense." *United States v. Goetzke*, 494 F.3d 1231, 1234-35 (9th Cir. 2007) (per curiam).

There is no doubt that, from the evidence, Tello was using the Internet, an instrumentality of interstate commerce, and that he tried to persuade the FBI agent posing as Cutelagrl93,

---

[3]Tello was also convicted of violating 18 U.S.C. § 2423(b) (traveling in interstate commerce with intent to engage in illicit sexual conduct). Tello does not appeal that conviction.

which in the context of this chat room would indicate a girl of thirteen, clearly under eighteen, to come with him to Arizona. Tello's appeal focuses solely on the fourth element—engaging in sexual activity that would constitute a criminal offense. This element requires that the statute be applied "to situations in which an individual could actually be prosecuted." *United States v. Dhingra*, 371 F.3d 557, 565 (9th Cir. 2004). "[A]pplication of § 2422(b) is limited to the jurisdiction and venue restrictions of state and federal law. [F]ederal criminal law can properly incorporate the criminal law of the state in which the offenses occurred." *Id.* (internal citation and parentheses omitted).

The criminal indictment alleged that Tello "could be charged with a criminal offense under California law, namely: Lewd Act Upon a Child Under the Age of 14 Years, a violation of California Penal Code Section 288; Oral Copulation, a violation of California Penal Code Section 288a; and Unlawful Sexual Intercourse with a Person Under the Age of 18 Years, a violation of California Penal Code Section 261.5."

Tello argues that a conviction under one of the California statutes pleaded in the indictment required that he intend to commit a physical sexual act upon a minor *within* the state of California. Tello argues that the evidence showed only that he intended to pick up a thirteen-year-old girl in California and return to Arizona, where he would engage in sexual activity with her. Because the government did not plead that Tello could be charged with a criminal act under Arizona law, where the intended sexual activity was to occur, Tello contends that there was insufficient evidence to support his conviction as pleaded. He concludes that his drive to Los Angeles to pick up what he thought was a thirteen year old to take to Arizona for sex does not show a crime under California law. We disagree.

**[1]** Under California statutory law, a person intending to commit a crime may be charged with a criminal offense if the

person commits any act within the state in partial execution of that intent. California Penal Code section 778a provides in relevant part,

> Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of that intent, which culminates in the commission of a crime, either within or without this state, the person is punishable for that crime in this state in the same manner as if the crime had been committed entirely within this state.

Cal. Penal Code § 778a(a). California Penal Code section 27 further provides that "[a]ll persons who commit, in whole or in part, any crime within this state" are liable to punishment under the law of California. Cal. Penal Code § 27(a).

**[2]** In *People v. Betts*, the Supreme Court of California held that section 778a "is satisfied if the defendant, with the requisite intent, does a preparatory act in California that is more than a de minimis act toward the eventual completion of the offense." 103 P.3d 883, 893 (Cal. 2005). The defendant in *Betts* was a California truck driver who was convicted under California Penal Code section 288(a) for committing lewd or lascivious acts on a child under the age of fourteen—one of the same statutes pleaded in the Tello indictment—when he molested his young step-granddaughters during two interstate and one intrastate trucking trips. *Id.* at 885-86. On appeal, the defendant argued that the evidence was insufficient to convict him on all counts because some of the offenses took place outside of California. *Id.* at 892-93. The California Supreme Court disagreed and affirmed the convictions. *Id.* at 893, 896. The court held that the evidence supported the conclusion that while the defendant was in California he had the intent to molest the girls and performed acts in furtherance of that intent:

The evidence presented at trial amply supports the conclusion that defendant formed the intent to molest the girls while he was in California . . . .

Defendant's acts of driving the girls across the state in his truck constitute sufficient conduct to establish California's jurisdiction over his crimes. These acts were not de minim[is]; they furthered the completion of the charged offenses by removing the girls from the protection of their mother and providing defendant with opportunities to be alone with each of them. Both of the victims were California residents, and California has a legitimate interest in protecting its residents from criminal conduct.

*Id.* at 893.

**[3]** Here, Tello concedes that the evidence showed that he intended to meet Cutelagrl93 in California for the purpose of engaging in illegal sexual activity and then drive to Arizona to complete his intended illegal acts. The evidence showed that Tello repeatedly sent Internet messages into California to persuade Cutelagrl93 to engage in illegal sexual activity with him, that Tello arranged to meet her in California, that Tello drove through California to meet her, and that Tello entered the California bookstore in Los Angeles at the prearranged time to pick her up. Tello's conduct in California was more than a de minimis act in furtherance of his intent to commit the crime. *See People v. Herman*, 119 Cal. Rptr. 2d 199, 215-16 (Ct. App. 2002). The evidence was sufficient to support a finding that Tello entered California with the requisite criminal intent and partially executed that intent within the state.[4] *See People v. Renteria*, 82 Cal. Rptr. 3d 11, 15 (Ct.

---

[4]Tello's reliance on *United States v. Patten*, 397 F.3d 1100 (8th Cir. 2005), is misplaced, even if we were inclined to follow it. *Patten* dealt with a state legal structure entirely unlike the one we face today. At the time of the *Patten* decision, North Dakota did not have an extraterritorial-

App. 2008) ("The ultimate question is whether given the crime charged there is a sufficient connection between that crime and the interests of the State of California such that it is reasonable and appropriate for California to prosecute the offense.").

Tello contends that California's extraterritorial-jurisdiction statute does not apply in this case because his criminal intent originated while he was in Arizona, not California. Tello relies on the statement in *Betts* that the defendant "*formed* the intent to molest the girls while he was in California." *See Betts*, 103 P.3d at 893 (emphasis added). Tello misapprehends the nature of the statement. The court's use of the term "formed" merely reflected that the defendant lived in California. The court did not call into question the crucial requirement of section 778a—that the defendant, regardless of where the intent originated, perform an act in furtherance of the criminal intent while in California. *See People v. Brown*, 109 Cal. Rptr. 2d 879, 883 (Ct. App. 2001). The evidence in this case sufficiently satisfied the statute.[5]

_____

jurisdiction statute like the one in California, and North Dakota generally criminalized conduct occurring within its borders or commencing outside its borders but consummated within the state. N.D. Cent. Code §§ 29-03-01, 29-03-01.1 (2003). In 2007, after the *Patten* decision, North Dakota amended its extraterritorial-jurisdiction statute to include out-of-state solicitation for sexual contact of a minor who is located within the state. *Id.* § 29-03-01.1(3) (2008).

[5]Nor are we persuaded that California's extraterritorial-jurisdiction statute does not apply in this case because there was no actual victim. California has repeatedly rejected the factual-impossibility defense, even in undercover Internet operations investigating illegal sexual activity with minors. *People v. Rojas*, 358 P.2d 921, 924 (Cal. 1961); *Hatch v. Superior Court*, 94 Cal. Rptr. 2d 453, 465-66 (Ct. App. 2000); *see also Meek*, 366 F.3d at 717 ("[A]n actual minor victim is not required for an attempt conviction under 18 U.S.C. § 2422(b).") (quotation marks omitted).

**IV**

**[4]** California has a strong interest in protecting its residents from sexual predators like Tello who enter the state to lure minors away to engage in illegal sexual activity in another state. We conclude that Tello could have been charged and convicted with a criminal offense under California law, even if he intended to engage in sexual activity with the minor only after returning to Arizona. There was sufficient evidence to support his conviction under § 2422(b).[6] We affirm.

**AFFIRMED.**

---

[6]Because we may affirm on any ground supported by the record, *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003), we do not address the various alternate grounds on which the government asks us to affirm.