# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2715

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

JEFFREY P. TAYLOR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:06 CR 169—**James T. Moody**, *Judge*.

ARGUED FEBRUARY 24, 2011—DECIDED APRIL 7, 2011

Before BAUER, POSNER, and MANION, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant was charged with violating 18 U.S.C. § 2422(b), which provides that anyone who, "using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States[,] knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal

offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life." He was convicted by a jury and sentenced to the statutory minimum of 10 years in prison. The appeal requires us to construe the statutory term "sexual activity"—surprisingly an issue on which there is very little law.

The cases hold (though more often just assume) that the "criminal offense" to which the statute refers can be a state rather than a federal crime, *United States v. Mannava*, 565 F.3d 412, 414-15 (7th Cir. 2009); *United States v. Dwinells,* 508 F.3d 63, 72 (1st Cir. 2007); *United States v. Dhingra*, 371 F.3d 557, 564-65 (9th Cir. 2004), although the statute does not say so, unlike the RICO statute, which does. 18 U.S.C. § 1959(a). For a federal statute to fix the sentence for a violation of a broad category of conduct criminalized by state law, such as "any sexual activity for which any person can be charged with a criminal offense," is a questionable practice. Congress cannot know in advance what conduct the state will decide to make criminal: if Indiana made leering a crime, and "sexual activity" were defined as broadly as the U.S. Attorney asks us to define it in this case, a minor offense would subject the offender to a 10-year minimum prison sentence. No matter; the defendant does not question that "criminal offense" in section 2422(b) includes state crimes.

The government relied on two Indiana offenses to convict the defendant: "touch[ing] or fondl[ing] the person's own body . . . in the presence of a child less than fourteen (14) years of age with the intent to arouse or

satisfy the sexual desires of the child or the older person," Ind. Code § 35-42-4-5(c)(3) ("fondling in the presence of a minor" is the name of this crime), and "knowingly or intentionally solicit[ing] a child under fourteen (14) years of age [or believed to be so] . . . to engage in . . . any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person." § 35-42-4-6(b)(3) ("child solicitation"). The defendant does not contend in this appeal that the conduct that he was accused of engaging in did not violate the Indiana statutes. He contends rather that such conduct is not "sexual activity" within the meaning of the federal statute, and therefore that his conviction—which was solely for violating federal law—should be quashed.

This is more than forfeiture; it is waiver; for he emphasizes the breadth of the Indiana statutes in order to bolster his claim that they should not be deemed absorbed into the federal statute. The only issue we discuss therefore is whether he is right that the conduct of which he is accused is not "sexual activity" within the meaning of the federal law.

A police officer entered an online chat room, where she "met" the defendant and identified herself as a 13-year-old girl. (It's because she was actually an adult that the defendant was charged with and convicted of an attempt rather than of a completed crime; section 2422(b) explicitly punishes an attempt just as severely.) After making a number of sexual comments to her that she pretended to welcome, the defendant masturbated in

front of his webcam, thus attempting to violate the "fondling in the presence of a minor" statute; and, in addition, by inviting the "girl" to masturbate, he attempted to violate the "child solicitation" statute as well. If an adult's masturbating in front of a child in an effort to arouse the child's sexual desires, and a child's fondling herself in a sexually suggestive way, as by masturbating, are forms of "sexual activity" within the meaning of the federal statute, then the defendant's violations of the two Indiana statutes violated section 2422(b) as well.

"Sexual activity" is not a defined term in the federal criminal code (Title 18). Chapter 117 of the code, which contains section 2422, doesn't have a definition section. The next section after section 2422 states that as used in that next section "the term 'illicit sexual conduct' means . . . a sexual act (as defined in section 2246) with a person under 18 years of age." 18 U.S.C. § 2423(f). The relevant part of section 2246, which appears in Chapter 109A of Title 18, defines "sexual act" as "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years." 18 U.S.C. § 2246(2)(D). The defendant was not charged with attempting to touch the supposed girl, and of course that would be impossible in an online chat room. So if section 2422(b) criminalized a "sexual act" rather than "sexual activity," it would be reasonably clear that he could not be convicted, unless the definition of "sexual act" elsewhere in Title 18 were thought to cast no light on its meaning in section 2422(b). On the contrary, we have previously used definitions found in

Chapter 109A (the chapter in which section 2246, defining "sexual act," appears) to assist in interpreting provisions in other chapters of Title 18 that punish sexual crimes. *United States v. Osborne*, 551 F.3d 718, 720 (7th Cir. 2009). Section 2422(b) is one of those provisions.

We need to decide whether "sexual activity" encompasses a broader range of acts than "sexual act." If it did, one would expect the term to be defined in the statute, to indicate just how broad that range was. Is watching a pornographic movie, or a pole dancer, or a striptease artist, or Balthus's erotic paintings, or Aubrey Beardsley's pornographic sketches, or Titian's "Rape of Europa," or "Last Tango in Paris" a "sexual activity"? How about inducing someone to watch one of these shows? Wikipedia defines "sexual activity" very broadly; the Wikipedia entry for "Human Sexual Activity" says that "sexual activity . . . includes conduct and activities which are intended to arouse the sexual interest of another, such as strategies to find or attract partners (mating and display behavior), and personal interactions between individuals, such as flirting and foreplay." "Human Sexual Activity," http://en.wikipedia.org/wiki/Human_sexual_activity (visited April 1, 2011). Does the government think that the term "sexual activity" in 18 U.S.C. § 2242(b) includes flirting? Well, how about "flashing"? That is "sexual activity" in the literal sense, though it does not involve physical contact and so is not a "sexual act." It is generally considered a rather minor sex crime, certainly not the sort of crime for which a minimum of 10 years in prison is a proper sentence. In Indiana, for example, "a person at least eighteen (18) years of age who

knowingly or intentionally, in a public place, appears in a state of nudity with the intent to be seen by a child less than sixteen (16) years of age commits public indecency, a Class A misdemeanor." Ind. Code § 35-45-4-1(b). And the maximum prison sentence for a Class A misdemeanor is only one year. § 35-50-3-2. Yet if the government's broad conception of "sexual activity" were accepted, then by virtue of that misdemeanor law a flasher in the lobby of the federal courthouse in South Bend, if charged under 18 U.S.C. § 2422(b), would be courting a prison sentence of at least 10 years.

One possible inference from the absence of a statutory definition of "sexual activity" is that the members of Congress (those who thought about the matter, at any rate) considered the terms "sexual act" and "sexual activity" interchangeable. This inference is reinforced by the fact that until 1998 section 2422(b) used the term "sexual act," while the preceding subsection, 2422(a), used "sexual activity," even though the two subsections were otherwise very similar, except that (a) concerns transporting minors across state lines rather than interstate solicitation and specifies a considerably lighter punishment (no minimum and a maximum of 20 years, versus a 10-year minimum and a maximum of life in (b)). In 1998, "sexual act" in (b) was changed to "sexual activity," but the committee report uses the terms "sexual activity" and "sexual act" interchangeably, indicating that the terms have the same meaning—that the purpose of the wording change from "sexual act" to "sexual activity" was merely to achieve semantic unifor-mity of substantively identical prohibitions, rather than

to broaden the offense in (b). H.R. Rep. No. 105-557, at 10, 20 (1998), reprinted in 1998 U.S.C.C.A.N. 678, 679, 688. The implication that Congress regards "sexual activity" as a synonym for "sexual act" is further supported by the fact that the statute brackets "sexual activity" with "prostitution," which involves physical contact. We find nothing in the 1998 amendment or its discussion by members of Congress to suggest a legislative purpose of subjecting less serious sexual misconduct (misconduct involving no physical contact) to the draconian penalties in subsection (b).

Elsewhere in the vast body of federal statutory law we find scattered references to "sexual conduct," "sexual act," and "sexual activity" or "sexual activities," but the terms seem to be regarded as synonymous, as in 42 U.S.C. § 608(a)(7)(C)(iii)(IV), which defines "battered or subjected to extreme cruelty" to include "being forced as the caretaker relative of a dependent child to engage in nonconsensual sexual acts or activities." It would be unrealistic to suppose that Congress never uses synonyms—that every word or phrase in a statute has a unique meaning, shared by no other word or phrase elsewhere in the vast federal code.

One might think that "sexual activity" connoted a series of acts rather than a single act: for example, being a sexual predator rather than committing a single act of sexual predation, or being a prostitute. But that is not argued (it would make the express reference to prostitution in the statute redundant, though many statutes are littered with redundancies), and anyway there is a

separate provision for enhanced punishment of sex-crime recidivists. 18 U.S.C. § 2426.

The government argues that as a matter of ordinary usage, "sexual activity" includes masturbation. True—but so does "sexual act." Yet Congress as we know defined "sexual act" as excluding sex acts that do not involve physical contact between two people. If "sexual activity" is no broader than "sexual act," it doesn't include solitary sex acts either. Congress elsewhere has defined "sexually explicit conduct" to include masturbation, but that's in a statute (18 U.S.C. § 2256(2)(A)) that criminalizes films and videos of children masturbating. (Maybe the defendant in this case could have been charged with attempting to produce child pornography because he asked the supposed minor to masturbate for him on her webcam. See 18 U.S.C. § 2252(a)(1), (b)(1). She said she had no webcam.)

The government acknowledges that "sexual activity for which a person can be charged with a criminal offense" is explicitly defined to include producing child pornography. 18 U.S.C. § 2427. Explicitly defining sexual activity to include producing child pornography was needed only if the term "sexual activity" requires contact, since the creation of pornography doesn't involve contact between the pornographer and another person; this is further evidence that "sexual activity" as used in the federal criminal code does require contact.

Last the government cites cases in which courts have referred to masturbation as a form of sexual activity. In none was the question that this appeal presents raised.

In one the court treated "sexual activity" as a synonym for "sexual acts." *United States v. Lee*, 502 F.3d 447, 448 (6th Cir. 2007). In two others, *United States v. Root*, 296 F.3d 1222, 1235-36 (11th Cir. 2002), and *United States v. Tello*, 600 F.3d 1161, 1163 (9th Cir. 2010), the defendant intended to have sexual intercourse with the (supposed) girl that he met in the chat room, and he actually traveled to meet her. *United States v. Holt*, 510 F.3d 1007, 1009 (9th Cir. 2007), a case not cited by the government, is similar to *Root* and *Tello*: the defendant traveled in order to meet and have sex with the supposed minor. The unreported decision in *United States v. Wales*, 127 Fed. App'x 424 (10th Cir. 2005), involved facts similar to those of this case, but again masturbation was merely assumed to be sexual activity within the meaning of section 2422(b). In our case of *United States v. Cochran*, 534 F.3d 631, 634 n. 3 (7th Cir. 2008)—another case factually similar to the present one—the question of the meaning of the term "sexual activity" in section 2422(b) was neither raised by the appellant nor answered by the court. Finally, *United States v. Womack*, 509 F.2d 368, 372 n. 4 (D.C. Cir. 1972), was a pornography case; it had nothing to do with section 2422(b), and merely illustrates (as do the other cases cited by the government) that masturbation is a form of "sexual activity" in the ordinary-language sense of the term, which judges use on occasion just as laypersons do. Masturbation is also a "sexual act" in that sense, but not in the statutory sense.

To repeat our basic point: if "sexual activity" and "sexual act" are synonymous in Title 18, as they appear

to be, then "sexual activity" requires contact because "sexual act," we know, does. We cannot be certain that they are synonyms. Maybe our interpretation of section 2422(b) is no more plausible than the government's. But when there are two equally plausible interpretations of a criminal statute, the defendant is entitled to the benefit of the more lenient one. "[T]he tie must go to the defendant." *United States v. Santos*, 553 U.S. 507, 514 (2008); see also *Bell v. United States*, 349 U.S. 81, 83-84 (1955) (Frankfurter, J.). "This venerable rule [the 'rule of lenity,' as it is called] not only vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed. It also places the weight of inertia upon the party that can best induce Congress to speak more clearly and keeps courts from making criminal law in Congress's stead." *United States v. Santos*, *supra*, 553 U.S. at 514.

Congress will have to define "sexual activity" more broadly than "sexual act" if it wants to bring the kind of behavior engaged in by the defendant in this case within the prohibition of section 2422(b) via the fondling and child-solicitation offenses found in the Indiana criminal code, when the defendant neither made nor, so far as appears, attempted or intended physical contact with the victim. In the meantime, however, assuming the defendant's conception of the breadth of the Indiana statutes is correct, our interpretation of the federal statute will not allow the likes of the defendant to elude just punishment. For his more serious Indiana offense (child solicitation involving use of the Internet,

which Indiana law treats as an aggravating circumstance), he could be sentenced to eight years in prison by an Indiana court. See Ind. Code §§ 35-42-4-6(b)(3), 35-50-2-6(a).

The judgment is reversed with instructions to enter a judgment of acquittal.

REVERSED AND REMANDED.

MANION, *Circuit Judge*, concurring. The court has presented a thorough comparative analysis of federal law and precedent to conclude that "sexual activity" and "sexual act" mean the same thing—under either label, any such act that does not involve physical contact between two people is excluded. I would not go so far and equate the term "sexual activity" with "sexual act." Sexual activity is a broader term that includes things sexual that do not involve the actual physical encounter.

I do, however, agree that there are serious problems with this case: I do not believe that Jeffrey P. Taylor could be successfully prosecuted for either of the Indiana crimes that the government alleged he committed, and for that reason, I respectfully concur with the court's judgment.

Under § 2422(b), the government must establish that Taylor "induced" a minor "to engage in . . . any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b). The government alleged that Taylor could be charged with fondling in the presence of a minor and solicitation. Ind. Code § 35-42-4-5(c)(3) ("fondling"); *Id.* § 34-42-4-6 ("solicitation"). The fondling statute provides, in relevant part, that it is a crime when an adult "touches or fondles the person's own body; in the presence of a child less than fourteen years of age with the intent to arouse or satisfy the sexual desires" of either the child or adult. Ind. Code 35-42-5-(c). At trial, Taylor's defense was that he thought the person "elliegirl1234" with whom he was having these online conversations was an adult, and the idea that he was engaging with minor was a fantasy. He did not argue that using a webcam did not place him in the presence of a minor, and thus he could not be convicted under § 35-42-5-(c). Although Taylor failed to argue that his actions did not violate Indiana law, I would still address the argument on plain-error review.

The Indiana statute does not qualify the term "presence" with words like "actual" or "constructive"; it simply states the adult must fondle himself "in the presence of" a minor. And Indiana has not defined the term presence in the statute. *Black's*, however, defines presence as:

> 1. The state or fact of being in a particular place and time <his presence at the scene saved two lives>. 2. Close physical proximity coupled with awareness <the agent was in the presence of the principal>.

*Black's Law Dictionary* 1302 (9th ed. 2009). The *Oxford English Dictionary* provides much the same definition: "The place or space in front of or around a person; the immediate vicinity of a person." 12 *Oxford English Dictionary* 392-93 (2d ed. 1989). Both definitions are spatial; they refer to a person being in a particular place with another individual. As a term in legal usage, "presence" comes up most often in the crime of robbery. In that context, a perpetrator must steal something from the other person's presence. Ind. Code § 35-42-5-1 (defining robbery as the taking of "property from another person or from the presence of another person"). Meaning: The property must be taken when the person and the robber are in the same physical place—presence cannot be divorced from physical proximity. *Coates v. State*, 534 N.E.2d 1087, 1096 (Ind. 1989). Not surprisingly, the concept of physical proximity has arisen in cases under the Indiana fondling statute at issue here. One Indiana court has stressed that the element of presence does not mean the minor has to know about the fondling; all it requires is that the child *"be at the place* where the defendant's conduct occurs." *Baumgartner v. State*, 891 N.E.2d 1131, 1138 (Ind. App. Ct. 2008) (emphasis added). In the dictionary and as illustrated in the robbery context and *Baumgartner*, presence is defined by physical proximity.

Although Indiana courts have not addressed whether the element of "presence" is satisfied by something other

than actual physical presence, other courts have.[1]
Georgia has a statute that is worded similarly to the
Indiana statute; it requires that the adult be "in the pres-
ence of" the child. Ga. Code § 16-6-4(a)(1). And Georgia
courts have held that conversations over phones and
webcams do not put the adult in the presence of the child.[2]
Likewise, the Court of Appeals for the Armed Forces has
held that neither a phone call nor a webcam constitutes
being in the presence of another person.[3]

---

[1] Concerning this statute, the only case discussing whether a
webcam puts the adult in the minor's presence is a federal
district court case where the defendant conceded that he was
in the presence of the minor. *United State v. Cochran*, 510
F. Supp.2d 470 (N.D. Ind. 2008). And on appeal we specifically
noted that Cochran's argument did not concern whether
he violated Indiana law. *United States v. Cochran*, 534 F.3d 631,
635 n.3 (7th Cir. 2008). So, *Cochran* is of no precedential or
persuasive value.

[2] *Vines v. State*, 499 S.E.2d 630, 632 (Ga. 1998) (telephone);
*Selfe v. State*, 660 S.E.2d 727 (Ga. Ct. App. 2008) (webcam).

[3] *United States v. Knowles*, 15 C.M.A. 404, 405 (C.M.A. 1965)
(telephone); *United States v. Miller*, 67 M.J. 87, 89 (A Ct. Crim.
App. 2008) (webcam). After the *Knowles* case the military code
was amended, and presence was clarified to only include
physical presence. A thorough review of this development
of the law on the issue of presence and technology is pre-
sented in Maj. Patrick D. Pflaum, *Shocking and Embarrassing
Displays On-Line: Recent Developments in Military Crimes
Involving Indecent Conduct Via Webcam*, Army Lawyer
(March 2010).

As a matter of common sense, most would agree with those courts: electronic communications do not place one person in another's presence. When Taylor and "elliegirl1234" communicated over Instant Messenger they were not in one another's presence. The same would be said if they had that conversation over the phone. The fact that a webcam is used does not change the analysis. Taylor's visual image on the computer doesn't make him anymore physically present than his voice does—it just enhances the effect. *See Selfe*, 660 S.E.2d at 730 (noting "[b]ecause both telephone and computer communications are by electronic transmissions, we are unable to distinguish the two modes as it relates to the necessity of 'presence'"). And there is no reason to unsettle or expand the accepted definition of "presence" to fit conversations over webcams when it wouldn't fit a conversation over the phone.

That's not to say there isn't a strong argument to be made that webcams and other similar technologies put two people in the constructive presence of one another.[4]

---

[4] *E.g., State v. McClees*, 424 S.E.2d 687, 689 (N.C. App. Ct. 1993) ("Through the forces of modern electronic technology, namely the video camcorder, one can constructively place himself in the 'presence' of another."); *State v. Whitmore*, ___ So.3d ___, 2011 WL 723158, *6 (La. App. Ct. 2010); *State v. Every*, 578 S.E.2d 642, 649 (N.C. Ct. App. 2003) (finding that use of a telephone, "albeit arguably less than modern, renders *defendant constructively present* under these circumstances." (emphasis added)).

Many, many courts have held this.[5] But in those cases, the courts have interpreted statutes that did not concern "presence"; instead some other term is used, usually the word "with."[6] In those states, presence is not an element of the offense; the prosecution only has to prove that the adult's actions would impair the health and morals of the child.[7] Indiana's legislature has, however, made "presence" an element of the offense.

[5] *E.g., Brooker v. Commonwealth*, 587 S.E. 2d 732, 735-36 (Va. Ct. App. 2003) (webcam); *McClees*, 424 S.E.2d at 689 (refusing "to hold that the words 'with any child'" require a defendant to be "within a certain distance of, or in close proximity to the child"); *see also United States v. Izaguirre-Flores*, 405 F.3d 270, 275 (5th Cir. 2005) (noting that for purpose of the sentencing guidelines "[g]ratifying or arousing one's sexual desires in the actual or constructive presence of a child is sexual abuse of a minor"); *Rabuck v. State*, 129 P.3d 861, 867 (Wyo. 2006) (finding a video camera constitutes constructive presence); *People v. Lopez*, 185 Cal. Rpt. 3d 232, 238-39 (Cal. Ct. App. 2010) (finding a video camera constitutes constructive touching).

[6] *E.g.,* N.C. Stat. § 14-202.1 (criminalizing taking "any immoral, improper, or indecent liberties *with any child*" (emphasis added)); Va. Code 18.2 § 18.2-370 (punishing indecent exposure when done "*with any child*" (emphasis added)); Wyo. Stat. § 14-3-105(a) (providing, in pertinent part, "any person knowingly taking immodest, immoral or indecent liberties with any child . . . is guilty of a felony." (emphasis added)).

[7] Conn. Gen. Stat. § 53-21(a)(1); *State v. Elliott*, ___ A.3d ___, 2011 WL 871747, *4 (Conn. App. Ct. 2011) (finding that masturbating over a webcam so a child can see would injure the child's morals).

It has not qualified the term with "actual or constructive," and if the term "presence" is expanded to include constructive and actual presence, that development should not come from the courts, especially the federal courts.

In sum, for Taylor to be convicted of fondling under § 35-42-4-5, the government had to prove that he was in the presence of a child. Since a webcam did not place him in the presence of "elliegirl1234," Taylor could not have been convicted of that offense.

The next issue is whether Taylor could have been convicted under Indiana law for solicitation. While masturbating over the webcam, Taylor also had a conversation with "elliegirl1234" over Instant Messenger, in which he told her to touch and caress her vagina. It was also during this typed conversation that "elliegirl1234" twice asked whether she and Taylor would meet, and twice Taylor told her that they could not—in his words, their relationship would remain a "fantasy."

Here, Taylor did not want to meet and have sex with "elliegirl1234," nor did he seek to meet "elliegirl1234" so he could fondle her. The only fondling that Taylor solicited was for "elliegirl1234" to touch herself, apart from him. That takes the case out of the typical solicitation scenario where an adult solicits a minor to meet and engage in sexual conduct, *Laughner v. State*, 769 N.E.2d 1147,1156 (Ind. Ct. App. 2002); *Kuypers v. State*, 878 N.E.2d 896, 898-99 (Ind. Ct. App. 2008), and makes Taylor's case unusual.

Under Indiana law, a person is guilty of soliciting a minor if the person "solicits" the child "to engage in

(1) sexual intercourse; (2) deviate sexual conduct; or
(3) any fondling or touching intended to arouse or
satisfy the sexual desires of either the child or the older
person." Ind. Code § 35-42-6. There are two ways to
read the statute: does the solicitation have to be for
"fondling" or "touching" with the other person, or does
simply instructing a person to do so apart from the
adult qualify. The first way would proscribe any solicita-
tion of a child to fondle herself, even if it is at a location
and time apart from the adult. So, under that reading,
a salacious letter that directed the minor to masturbate
would be a crime. The other construction would mean
that the solicitation would have to be for fondling with
the adult. These legitimate and competing readings
render the final element ambiguous.

As a matter of statutory construction, when we have
terms that are open to competing definitions, we usually
define them in reference to the terms they appear with.
As the Supreme Court has cautioned, the rule that "a
word is known by the company it keeps, while not an
inescapable rule, is often wisely applied where a word
is capable of many meanings to avoid the giving of unin-
tended breadth of the [legislature]." *National Muffler
Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 486
n.20 (1979) (quoting *Jarecki v. G.D. Searle & Co.*, 367
U.S. 303, 307 (1961)). A related rule of construction
dictates that when specific words of limited meaning
and application are followed by words of a more
general meaning, "the general words are to be con-
strued as including only those things that are like those
designated by the specific words." *Salter v. State*, 906
N.E.2d 212, 220 (Ind. Ct. App. 2009).

Here, the statute proscribes soliciting a child to engage in sex, deviate sex, and fondling. When someone solicits sex and presumably deviate sex, it requires another person—those acts cannot be done alone. Generally, when someone solicits a child for sex it means that the adult is soliciting the child to have sex with him, not that the adult is encouraging the child to have sex apart from the person doing the soliciting, or have sex as a general matter. If we read the terms fondling and touching in the same manner as sex and deviate sex, only fondling and touching that is done with the other person would be included, and not simply touching that occurs at a person's request but apart from the other person. This would confine the statute to the typical scenario where the adult seeks to meet the child to have sex with or to fondle her. And it would not reach the situation of the salacious letter. Indeed, adopting this sensible way of reading the statute keeps us from giving it unintended breadth. *National Muffler Dealers Ass'n, Inc.*, 440 U.S. at 486. Additionally, this reading is reinforced by the rule of lenity, which instructs that "ambiguity in the meaning of a statutory provision should be resolved in favor of the defendant." *United States v. Turcotte*, 405 F.3d 515, 535 (7th Cir. 2005). If the Indiana legislature wants to expand the definition to include Taylor's conduct, it can easily do so without the ambiguity. And if the Indiana courts face a similar case and interpret the statute expansively, then it would be binding on us. But since there is no similar Indiana case on this issue, I do not believe the statute covers Taylor's conduct.

Of course, the government is not obliged to wait for Indiana to have a case on point before it can charge Taylor with a crime under § 2422, but when Congress chooses to define a crime by state law, federal prosecutors cannot exceed the scope of the state law and seek to punish conduct that is not illegal under the statutes listed in the indictment—even though the conduct is extremely disturbing. Here, the prosecutor was free to charge Taylor with many other crimes; in addition to the offenses pointed out by the court's opinion, the prosecutor could have charged Taylor with at least two federal offenses. 18 U.S.C. § 1470 (attempting to transfer obscene matter to a minor); 47 U.S.C. § 223(d)(1) (sending obscene images to a minor).

It bears noting one final reason for giving the solicitation statute a limited reading. When this statute was passed in 1984, Taylor's conduct was unimaginable. While law constantly trails crime, in the context of sexual behavior and technology the problem is particularly clear—the old laws will not do. The legislature has to specifically address this lamentable behavior and determine what the law truly proscribes. Under our current laws, with the advent and prevalence of "sexting" and virtual sexual behavior, many, many citizens are engaging in behavior that could make them felons. *See* Jordan J. Szymialis, *Sexting: A Response To Prosecuting Those Growing Up with a Growing Trend*, 44 Ind. L. Rev. 301 (2010) (a thorough article surveying the problem

and offering suggestions for the legislature).[8] It is not enough to let the courts figure it out and to try to see if old definitions fit this new and troubling behavior.

In sum, although Taylor's conduct was inappropriate and extremely troubling, I do not believe it would constitute a crime under either of the Indiana statutes listed in the indictment. For that reason, I concur with the court's judgment.

---

[8] *See also* Terri Day, *The New Digital Dating Behavior—Sexting*, 33 Hastings Comm. & Ent. L. J. 69 (2010); Robin Fretwell Wilson, *Sex Play in Virtual Worlds*, 66 Wash. & Lee L. Rev. 1127 (2009) (outlining how pedophiles use virtual worlds to solicit children, and the rise of virtual sex); Federal Trade Commission Report to Congress, *Virtual Worlds and Kids: Mapping the Risks*, 2009 WL 4755418 (F.T.C.) (giving recommendations to Congress on how to combat the threat to children in virtual worlds).